61 P.3d 548

Judith HARTMAN, Appellant–Appellee,

v.

Kent D. THEW, Appellee–Appellant,

and

Child Support Enforcement Agency, State Of Hawai'i, Appellee–Appellee.

No. 24360.

Intermediate Court of Appeals of Hawai'i.

Dec. 26, 2002.

Richard Hacker, Honolulu, on the briefs, for Appellee–Appellant.

Judith L. Hartman, on the briefs, Appellant–Appellee, pro se.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

In this secondary appeal, Appellee–Appellant Kent D. Thew (Father) appeals from the family court's June 1, 2001 Notice and Judgment on Appeal that finalized the family court's June 1, 2001 "Decision and Order Reversing and Remanding the Administrative Findings and Order Filed on May 16, 2000" (June 1, 2001 Decision and Order). We affirm the family court's (a) June 1, 2001 Notice and Judgment on Appeal, and (b) the "CONCLUSION" paragraph of the family court's Decision and Order.

In this opinion, we conclude that, with the consent of the payor-parent, the family court is authorized to enter an order barring the payor-parent, for a period of three years, from seeking a reduction in court-ordered child support.

## BACKGROUND

Consistent with the agreement of Father and Appellant–Appellee Judith Hartman (Mother), the September 9, 1997 Divorce Decree (Divorce Decree) entered by District Family Judge Karen M. Radius in *Thew v. Thew*, FC–D No. 96–4151, Family Court of the First Circuit, State of Hawai'i, states, in relevant part, as follows:

3. There was one (1) child born of the marriage:

| NAME | DATE OF BIRTH |
| --- | --- |
| [Son] | July 17, 1989 |

4. *Custody*. [Father] and [Mother] shall be awarded joint legal custody of the minor child and [Mother] shall be awarded physical custody of the minor child ... subject to [Father's] rights of reasonable visitation....

. . . .

5. *Child Support*. [Father] shall pay to [Mother] as and for the support, maintenance, and education of [Son] the sum of $2,000.00 per month ... commencing on June 5, 1997.... **Child support shall be recalculated three (3) years following the effective date of divorce.**

. . . .

7. *Post High School, Higher Education Expenses.*

(a) *Child Resides Principally with [Mother]*. Should [Son] continue his education post high school ... and reside principally with [Mother], each party shall pay a portion of [Son's] tuition expense in proportion to their respective gross incomes **per line 6. of the Child Support Guidelines Worksheet....**

(b) *Child Does Not Reside Principally with [Mother]*. Should [Son] continue his education post high school ... and *not* reside principally with [Mother], then [Mother] shall be responsible for paying [Son's] room and board expense to the extent of her child support obligation each month. Any remaining unpaid balance for [Son's] room and board expense and his tuition expense shall be paid by the parties in proportion to their respective gross incomes **per line 6. of the Child Support Guidelines Worksheet....**

. . . .

11. *Alimony.* **There shall be no order for alimony.**

. . . .

17. *Attorney's Fees and Costs.* Each party shall assume and pay his or her own attorney's fees and costs.

18. *Tax Matters.*

. . . .

(b) *Tax Exemption.* [Father] shall be entitled to claim [Son] as an exemption on his personal income tax returns for 1997 **until child support is recalculated upon a reasonable change in circumstances. . . .**

. . . .

20. *Failure to Perform.* If either party shall fail to perform any obligation(s) which he or she has agreed to perform under the provisions of this Decree and enforcement becomes necessary, the failing party may be held responsible for all attorney's fees and costs incurred by the other party to the extent that such fees and costs were reasonably necessary to enforce performance by the failing party.

(Bolded emphases added.)

All of the words, symbols, and numbers emphasized in bold above were handwritten insertions. The handwritten "$2,000.00" insertion in paragraph 5 replaced a typed "$1,750.00." The handwritten insertion in paragraph 11 stating that "[t]here shall be no order for alimony" replaced a printed provision that would have ordered alimony at the rate of $555.00 per month commencing June 5, 1997. The handwritten insertion in paragraph 18(b) stating "until child support is recalculated upon a reasonable change in circumstances" replaced the printed words "and thereafter."

An October 28, 1997 amended divorce decree (Amended Divorce Decree) did not change the above provisions and was not appealed.

We label the nonexceptional circumstance amount of child support payable pursuant to the applicable Child Support Guidelines the "Guideline Amount." We label child support in excess of the Guideline Amount a "Plus–Deviation."

In July 1999, at Father's request, Appellee–Appellee Child Support Enforcement Agency (CSEA)[1] recalculated and reduced Father's child support obligation to the Guideline Amount calculated pursuant to the 1998 Child Support Guidelines. In its answering brief filed in the family court, the CSEA explained, in relevant part, as follows:

The record indicates that the parties stipulated to the terms of their Divorce Decree in June of 1997. The amount of the child support agreed to by the parties was the amount of two thousand dollars per month. The record on appeal is devoid of any evidence regarding the income of the parties at the time of the divorce and what the Child Support Guidelines calculations were at the time of divorce. We assume that this information was, therefore, not before the hearings officer for the purposes of this hearing.

The record reflects that CSEA pursued child support modification proceedings based on a change in support calculated through the (then) recently revised 1998 Child Support Guidelines. CSEA determined that there was a change in circumstance based merely on a comparison of what the Divorce Decree provided in the way of child support and the more current 1998 Child Support Guidelines calculations.

(Record citations omitted.)[2]

The CSEA mailed to Mother (1) a proposed Administrative Findings and Order re-

---

1. *See* Hawai'i Revised Statutes (HRS) § 576D–2 (Supp.2001).

2. We label the nonexceptional circumstance amount of child support payable pursuant to the applicable Child Support Guidelines the "Guideline Amount." We label child support in excess of the Guideline Amount a "Plus–Deviation." In our view, it is the duty and burden of Appellee–Appellee Child Support Enforcement Agency (CSEA) and/or the Office of Child Support Hearings (OCSH) to obtain and examine the family court record before either or both makes a decision to reduce a Plus–Deviation previously ordered by the family court. If the family court decided that the case presented an exceptional circumstance authorizing a Plus–Deviation and ordered it and, thereafter, the CSEA and/or OCSH considers the question whether to reduce or discontinue that Plus–Deviation and reduce the child support toward or to the Guideline

ducing child support to $790 per month commencing August 1, 1999, and (2) a notice of an August 31, 1999 hearing. Mother requested an administrative hearing pursuant to HRS § 576E-6 (Supp.2001). The Office of Child Support Hearings (OCSH) conducted an administrative hearing on August 31, 1999. Both parties were present and each was represented by counsel. In the May 16, 2000 Administrative Findings and Order, OCSH Hearing Officer Ronald D.S. Lau decided that Father's child support obligation commencing August 1, 1999, was $900 per month. If there was any other basis for this decision than the 1998 Child Support Guidelines, Father's income of $7,908 per month,

Amount, the CSEA and/or the OCSH must consider, to the extent that it is on the family court record, the family court's factual reason for the prior Plus–Deviation and determine whether there has been a substantial or material change to it, or there is any other valid reason, authorizing a reduction of the prior Plus Deviation. Hopefully, the family court will have complied with this court's admonition in footnote 3 of *Davis v. Davis*, 3 Haw.App. 501, 653 P.2d 1167 (1982), that "it is very important that the record contain the material circumstances which are before the court when it enters an order[,]" and will have stated its factual basis and reasons for approving and ordering the Plus–Deviation.

The American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations, states, in relevant part, as follows:

§ 3.07 Presumptive Effect of the Child–Support Formula

(1) The child-support rules should provide that the obligation established by the child-support formula is presumptively just and appropriate. Unless the presumption is rebutted as provided in this section, the amount determined by the child-support formula should be incorporated in the child-support award.

(2) The presumption established by Paragraph (1) is a presumption affecting the burden of proof. It should be rebuttable only by proof that, taking into account the interests of the child, the amount determined by the child-support formula would be unjust or inappropriate, under the particular circumstances of the case, for one or more of the following reasons:

. . . .

(d) the parents have agreed to a greater amount, or the parents have agreed to a lesser amount and their agreement has been reviewed and approved by the court pursuant to § 3.13;

. . . .

(3) The child-support rules should require that, when departing from the formula as permitted by Paragraph (2), the court state in writing all of the following:

and Mother's income of $3,576 per month, the record does not reveal it.[3]

Mother filed an appeal to the family court pursuant to Hawai'i Revised Statutes (HRS) § 576E-13 (Supp.2001).

On May 11, 2001, after a hearing, Judge Frances Q.F. Wong orally decided the appeal. Judge Wong's June 1, 2001 Decision and Order states, in relevant part, as follows:

## DISCUSSION

*1. The Divorce Decree is a valid and enforceable contract under the law.*

. . . .

(a) the amount of support that would have been ordered under the formula, and the amounts of income, as defined by §§ 3.14–3.16, that are used in determining the amount due under the formula;

(b) the amount of support actually ordered;

(c) the reasons for the difference.

PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION· ANALYSIS AND RECOMMENDATIONS § 3.07 (2000).

§ 3.13 Effect of a Parental Agreement on a Child–Support Award

(1) The child-support terms of a parental agreement should be approved and adopted by the court unless the agreement provides for substantially less child support than would otherwise be awarded under this Chapter. In that case, the court should not approve and adopt the child-support terms unless the court determines that, when read with the agreement as a whole, they are consistent with the interests of the child. In approving such child-support terms, the court should comply with the writing requirements of § 3.07(3).

(2) The child-support terms of a parental agreement, or a court order incorporating those terms, are subject to modification under §§ 3.17–3.22. However, any modification of child support should take into account all the terms of any agreement approved by the court under this section.

PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS § 3.13 (2000).

We disagree with the American Law Institute's conclusion that the agreement of the parties to child support in an amount less than the amount specified by the guidelines is an exceptional circumstance. We recognize that the facts motivating the agreement of the parties may constitute an exceptional circumstance.

3. The OCSH did not comply with its duty stated in HRS § 91-12 (1993): "**Decisions and orders.** Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, . . . shall be accompanied by separate findings of fact and conclusions of law."

In the instant case, at the time of divorce, the parties had a clear agreement to three years of child support at $2,000.00 per month. Upon review of the four corners of the contract, the contract appears to be valid and voluntarily entered into by the parties.... There is no allegation by Father or CSEA that the contract is null and void due to fraud or misrepresentation. Therefore, the Court finds no justification for cancellation or modification of the contract. As such, as well as applying the best interest of the child standard, this Court concludes the Divorce Decree is a valid contract.

. . . .

As this Court finds the Divorce Decree to be a valid contract, upon review of the record, the Hearings Officer committed clear error by modifying the child support amount owed to Mother prior to September 9, 2000. Thus, the Administrative Findings and Order filed May 16, 2000, is in violation of the Divorce Decree and is reversed. Child support is $2,000.00 per month to be paid to Mother.

. . . .

The parties' Divorce Decree clearly provides for an award of attorneys' fees and costs to the party who has incurred costs to enforce performance of the contract. The Court finds that Father has failed to perform the obligation of paying child support in the amount of $2,000.00 to Mother as ordered per the Divorce Decree. Thus, the Court finds based on Father's failure to perform and for the reasons as set forth above, the attorneys' fees and costs of Mother for the Agency hearing and the appeal shall be borne by Father.

## CONCLUSION

Therefore, the Office of Child Support Hearings' Administrative Findings and Order filed on May 16, 2000, is **REVERSED AND REMANDED** with the following instructions: 1) the [OCSH] will reinstate child support in the amount of $2,000.00 per month and establish child support arrearage, if any, consistent with this order;

... 4) [Father] will pay [Mother's] attorneys' fees and costs[.]

(Emphases in original.)

## DISCUSSION

██ The family court's conclusion that "the Divorce Decree is a valid contract" is wrong. The Amended Divorce Decree, as amended by the handwritten insertions, is a family court decree/judgment. *Jendrusch v. Jendrusch*, 1 Haw.App. 605, 609, 623 P.2d 893, 896–97 (1981). When interpreting a decree/judgment, the determinative factor is the intention of the court as gathered from all parts of the decree/judgment itself. *Id.*

In this case, the Divorce Decree stated, in a handwritten insertion on the otherwise typed document, that "[c]hild support shall be recalculated three (3) years following the effective date of divorce." This order leads us to deduce that the child support specified in the Amended Divorce Decree was in excess of the Guideline Amount specified by the then applicable 1994 Child Support Guidelines. This deduction is based in part on the fact that if this provision was not intended to preclude, for that three year period, the reduction of the child support ordered, the following statutes show that this order was unnecessary.

HRS § 571–52.5 (1993) states, "When the court establishes or modifies the amount of child support required to be paid by a parent, the court shall use the guidelines established under section 576D–7, except when exceptional circumstances warrant departure."

HRS § 576D–6(a)(11) (Supp.2001) states, in relevant part, that "[t]he [CSEA] shall: ... [p]rovide notice not less than once every three years to those parents subject to an order of support informing the parents of their right to request the agency to review and, if appropriate, adjust the order of support pursuant to the guidelines established under section 576D–7[.]"

HRS § 576D–7 (Supp.2001) states, in relevant part, as follows:

(c) The family court, in consultation with the [CSEA], shall update the guidelines at least once every four years.

(d) The establishment of the guidelines or the adoption of any modifications made to the guidelines set forth in this section may constitute a change in circumstances sufficient to permit review of the support order. A material change of circumstances will be presumed if support as calculated pursuant to the guidelines is either ten per cent greater or less than the support amount in the outstanding support order. The most current guidelines shall be used to calculate the amount of the child support obligation.

(e) The responsible or custodial parent for which child support has previously been ordered shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances. The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment of the child support order more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.

As noted above, in its answering brief filed in the family court, the CSEA points out that "[t]he record on appeal is devoid of any evidence regarding the income of the parties at the time of the divorce and what the Child Support Guidelines calculations were at the time of divorce" and then "assumes that this information was, therefore, not before the hearings officer for the purposes of this hearing." Considering that the opposite assumption is equally valid, we conclude that this assumption is invalid.

In its answering brief filed in the family court, the CSEA stated the following in support of its request for a remand:

It appears that since the time of the divorce, [Father's] income from his military employment increased. There appears to be some argument on the record whether other sources of [Father's] income have decreased, but without reference to what the circumstances of the parties were

at the time of the divorce, it is not discernible what the change of circumstances amounted to, if anything.

. . . .

[Mother] argues, in part, that [Father] failed to sufficiently show a change of circumstance justifying a modification of child support. The record is unclear as to whether a change of circumstance exists because of the lack of information as to what the circumstances of the parties were at the time of the divorce. [Mother] seems to argue that a higher amount of child support than what the guidelines provided for at the time of the divorce was agreed to between the parties. Pursuant to the lack of a complete record, and any comparison of what the respective child support guidelines would have produced, full appellate review is not possible at this time. This court is unable to determine whether this is a valid issue on appeal and whether the hearing officer's findings and conclusions are appropriately supported by the evidence. In other words, the court is unable to apply the applicable standard of review. . . .

It may be that relevant testimony was elicited, but just missing from this proceeding's transcripts. This incomplete transcript is not the fault of the parties. It is the position of CSEA that this matter should be remanded for further establishment of the record.

(Record citations omitted.)

The only authority possibly used by the CSEA and the OCSH for reducing the court-ordered prior Plus–Deviation in the amount of child support payable by Father is HRS § 576D–7(d) and (e) quoted above. For the following reasons, we conclude that the Amended Divorce Decree barred the CSEA and the OCSH from recalculating child support and lowering it prior to September 9, 2000, the first day after three years after the entry of the Divorce Decree.

This court has concluded that the agreement of the parties to a Plus–Deviation is an exceptional circumstance authorizing the family court to order that Plus–Deviation from the amount specified by the guidelines.

*Ching v. Ching,* 7 Haw.App. 221, 224, 751 P.2d 93, 96 (1988).

In the case on appeal, Father and Mother agreed to a Divorce Decree that ordered (1) a Plus–Deviation and (2) that the Plus–Deviation would not be changed for the following three years. When the court entered the Divorce Decree and the Amended Divorce Decree, Father no longer had a right, during that three-year period, to a reduction of child support pursuant to HRS § 576D–7(d) and (e) quoted above. We conclude that, with the consent of the parties, the family court is authorized to enter the order it entered in this case barring Father and Mother, for a period of three years from the date of the order, from asking the CSEA and the OCSH to use the then applicable guidelines as a basis for reducing the court-ordered Plus–Deviation in the amount of child support payable.

## CONCLUSION

Accordingly, we affirm the family court's (a) June 1, 2001 Notice and Judgment on Appeal and (b) the "CONCLUSION" paragraph of its June 1, 2001 Decision and Order.